907 A.2d 452

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

v.

**Lawrence J. DIANGELUS, Respondent.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 2005.

Decided Sept. 27, 2006.

Alan J. Davis, Esq., Philadelphia, for Office of Disciplinary Counsel.

Samuel C. Stretton, Esq., West Chester, William Costopoulos, Lemoyne, for Lawrence J. DiAngelus.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

### OPINION

Justice NEWMAN.

Respondent Lawrence J. DiAngelus (DiAngelus) has filed exceptions to the recommendation of the Disciplinary Board (Board) that he should be disbarred. For the reasons that follow, we find that DiAngelus engaged in misconduct and as a result we impose a sanction of a five-year suspension.

### Background

DiAngelus was admitted to the Pennsylvania bar in 1972. In 1984, this Court issued an Order of disbarment on consent based upon DiAngelus' misuse and misappropriation of client funds obtained by securing unauthorized client loans, commingling and converting client funds and failing to account for the disposition of these funds when requested to do so. We reinstated him on December 11, 1992. In 2002, DiAngelus received an informal admonition resulting from an incident when he was co-counsel in a DUI matter. While DiAngelus' co-counsel was out of the country, DiAngelus, without co-counsel's knowledge or permission, signed co-counsel's name on a petition and verification.

On December 1, 2003, the Office of Disciplinary Counsel (ODC) filed a Petition for Discipline based on DiAngelus' representation of two clients in two different matters. In the first matter, ODC alleged that in the course of his representation of Robert Closs (Closs), DiAngelus lied to a magisterial district judge. In the second matter, ODC alleged that while representing Patricia Dubolino (Dubolino), DiAngelus lied to the assistant district attorney about the existence of a plea agreement with the arresting officer. The assistant district attorney relied upon this misrepresentation when advising the judge of the prosecution's position in the matter.

DiAngelus filed an Answer to the Petition for Discipline on December 24, 2003. A three-member Hearing Committee held proceedings on April 21 and 22, 2004. Following submission of briefs by the parties, the Committee filed a Report on September 23, 2004, finding that ODC had failed to meet its

burden to establish that DiAngelus violated any Rules of Professional Conduct (RPC) regarding the Closs matter (Charge I). However, with respect to the Dubolino matter (Charge II), the Committee held that DiAngelus violated the following Rules: (1) RPC 4.1(a), which prohibits a lawyer "[i]n the course of representing a client" from "knowingly mak[ing] a false statement of material fact or law to a third person," (2) RPC 8.4(c), which prohibits lawyers from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation," and (3) RPC 8.4(d), which prohibits "conduct that is prejudicial to the administration of justice." The Committee recommended that DiAngelus be disbarred.

ODC filed a Brief on Exceptions on October 8, 2004, objecting to the Committee's dismissal of Charge I. DiAngelus filed a Brief on Exceptions and Response to ODC's Exceptions on October 12, 2004, objecting to the Committee's finding of violations in Charge II and the recommendation of disbarment. DiAngelus requested oral argument before the Board. ODC filed a Brief Opposing Respondent's Exceptions on October 25, 2004.

A three-member panel of the Board held oral argument on November 10, 2004. The Board adjudicated this matter at a meeting on November 17, 2004. By Report and Recommendation dated March 23, 2005, the Board agreed with the Hearing Committee with regard to dismissal of Count I and the finding of violations in Charge II. A majority of the Board recommended disbarment.[1]

1. We agree with the Hearing Committee and the Board that ODC did not establish a violation of any Rules of Professional Conduct with respect to the Closs matter (Count I). ODC sought to prove that on June 25, 2002, DiAngelus misrepresented to Magisterial District Judge Gerald Liberace (Judge Liberace) that Officer Sean Clifton (Officer Clifton) of the Haverford Township Police Department had agreed to reduce the charge against Closs from driving while operating privilege is suspended, 75 Pa.C.S. § 1543, to driving without a valid license, 75 Pa.C.S. § 1501. Closs and his mother testified that they saw DiAngelus speak to Officer Clifton outside the courtroom, and that Officer Clifton was present during the proceedings before Judge Liberace when DiAngelus stated that he had reached an agreement with the arresting officer.

*The Dubolino Matter*

*Evidence Establishing Misconduct*

In September of 2000, Officer William Shields (Officer Shields) of the Haverford Township Police Department issued a citation to Dubolino for violating Section 1786 of the Motor Vehicle Code (Code), 75 Pa.C.S. § 1786 (failure to maintain financial responsibility). She was found guilty of the offense in the magisterial district court. After her conviction, the Department of Transportation (DOT) notified her that it would suspend her operating privileges for three months. Following expiration of the thirty days in which to file an appeal from the decision of the magisterial district court, Dubolino retained DiAngelus to file a civil license suspension appeal *nunc pro tunc* and a *nunc pro tunc* summary criminal appeal in the Court of Common Pleas. On January 31, 2001, DiAngelus appeared before the Honorable Kenneth Clouse in the Court of Common Pleas of Delaware County for Dubolino's *nunc pro tunc* summary appeal. At the hearing, the Commonwealth agreed to withdraw the charge of violation of Section 1786 in exchange for Dubolino pleading guilty to the lesser charge of violation of Section 1301 of the Code, 75 Pa.C.S. § 1301 (driving unregistered vehicle prohibited).[2]

ODC alleged that the Commonwealth agreed to this disposition based on a misrepresentation by DiAngelus to then Assistant District Attorney Jack Stollsteimer (ADA Stollsteimer) that Officer Shields agreed to a reduction of the charges. ADA Stollsteimer testified as follows before the three-member Hearing Committee:

Mr. Davis (Disciplinary Counsel): Now, did you have any conversations with Mr. DiAngelus about this agreement before it was presented to Judge Clouse?

**2.** Section 1301(a) of the MVFRL provides:

Driving unregistered vehicle prohibited.—No person shall drive or move and no owner or motor carrier shall knowingly permit to be driven or moved upon any highway any vehicle which is not registered in this Commonwealth unless the vehicle is exempt from registration.

75 Pa.C.S. § 1301(a).

[ADA]: Yes, we negotiated the guilty plea.

Davis: And do you recall who the citing police officer was in this matter?

[ADA]: Bill Shields, an officer from Haverford Township.

Davis: And did his name come up in your conversation?

[ADA]: It did. He was not present in court that day, and I remember asking Mr. DiAngelus if he had talked to Officer Shields and got his agreement for us to drop the one charge and for her to plead to the lesser charge.

Davis: And what did Mr. DiAngelus tell you?

[ADA]: He told me that he talked to Officer Shields and that he did agree.

Davis: And that who agreed?

[ADA]: Officer Shields agreed with that disposition of the case.

Davis: And you're saying Officer Shields was not present in the courtroom that day?

[ADA]: He was not. I don't know if he was there earlier, but at the time I was handling that matter he was not there, and that's why I asked Mr. DiAngelus about that.

Notes of Testimony (N.T.), 4/21/04, at 234–35.

Kelly Sullivan, Esquire, who was an intern at the Delaware County District Attorney's Office at the time of the incident, corroborated the testimony of ADA Stollsteimer, and stated, "My recollection is that Mr. DiAngelus told [ADA Stollsteimer] that Officer Shields agreed to a certain disposition in the case." *Id.* at 271.

Meanwhile, Officer Shields testified that, contrary to DiAngelus's representations, he had had no conversations with DiAngelus regarding the Dubolino case prior to the January 31 hearing. *Id.* at 285 ("[Davis]: Did you have any discussions at all with Mr. DiAngelus about the Dubolino matter before January 31, 2001? [Shields]: None."). Officer Shields also testified that he and Mark Werlinsky (Attorney Werlinsky), a PennDOT attorney, encountered DiAngelus at Dubolino's license suspension hearing on March 13, 2001, and that

DiAngelus again asserted that he had reached an agreement with Officer Shields on January 31, an assertion that Officer Shields vehemently denied. Specifically, Officer Shields testified as follows:

> Davis: Did you and Mr. Werlinsky have any conversations with Mr. DiAngelus prior to the [license suspension] hearing before Judge Clouse?
>
> Shields: Yes.
>
> Davis: And please tell the Committee what occurred during those conversations.
>
> Shields: After I had chatted with Mr. Werlinsky and explained the nature of my involvement in this case, Mr. DiAngelus walked up to Mr. Werlinsky and I was standing next to Mr. Werlinsky, Mr. Werlinsky said to Mr. DiAngelus that I just spoke to Office Shields and he told me he wasn't in court on January 31st of this year in reference to this case.
>
> Mr. DiAngelus looked at me says [*sic*], you remember you were here, and you agreed to the dispositions on the two citations. I said I wasn't in Delaware County Common Pleas Court on that day, and I didn't agree to any dispositions because I wasn't here.
>
> I pulled out my calendar, and I said this is my schedule, you can look right here for January 31st, and I pointed to it, and I said I didn't have court scheduled on that day and I wasn't here. And then he said you don't remember, you were here for court on that day. I said I wasn't here for court on that day, and I didn't agree to any dispositions, and then Mr. DiAngelus left the courtroom and walked into the hall.

*Id.* at 286–88. Attorney Werlinsky testified regarding the same encounter:

> Werlinsky: I remember Officer Shields saying something to the effect that there had never been a hearing, and at that point Mr. DiAngelus said something to the effect that you were at a hearing and you agreed to lower the charge, and Officer Shields said it never happened.

I believe he asked for the hearing date and then he got his calendar out to show that he didn't have anything down on that date. . . .

*Id.* at 303. Clearly, because Officer Shields was not in court on January 31, 2001, he could not have consented to withdrawing the charge of violating Section 1786 of the Motor Vehicle Act.

▮ Evidence is sufficient to prove unprofessional conduct if a preponderance of the evidence establishes the conduct and the proof of such conduct is clear and satisfactory. *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 425 A.2d 730, 732 (1981). In addition, while our review is de novo, the findings of the Hearing Committee and the Disciplinary Board are "guidelines for judging the credibility of witnesses," *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186, 188 (1983), and should be given "substantial deference." *Office of Disciplinary Counsel v. Anonymous Attorney A.,* 552 Pa. 223, 714 A.2d 402, 404 (1998). The testimony cited above provided the Hearing Committee and the Board with a sufficient factual basis on which to conclude that DiAngelus falsely represented to ADA Stollsteimer that DiAngelus "engaged in conduct involving dishonesty, fraud, deceit or misrepresentation," thereby establishing a violation of RPC 8.4(c). However, to establish that the fraudulent misrepresentation was of a "material fact," RPC 4.1(a), and was "prejudicial to the administration of justice," RPC 8.4(d), the ODC was also required to establish that the violation affected the outcome of the proceedings. While DiAngelus essentially argues that there is not sufficient evidence to establish these additional facts, we disagree.

As stated above, the Hearing Committee found that the ADA and judge accepted a plea to the lesser charge based on DiAngelus's misrepresentation. However, DiAngelus contends that the trial court did not dismiss the greater charge, *i.e.,* a charge of driving without financial responsibility, because of the purported plea agreement, but rather, found Dubolino not guilty of that charge based on evidence presented at the hearing that Dubolino's estranged husband, not

Dubolino herself, was the owner of the uninsured car. In support of this assertion, DiAngelus cites the transcript of the guilty plea hearing, which provides as follows:

[ADA]: We've reached an agreement in this matter, Your Honor.

\* \* \*

[The] Commonwealth will be withdrawing one of the two citations, Your Honor, 5550106–2, which is a reflective charge of 1786, Required Financial Responsibility. Mr. DiAngelus has presented evidence, Your Honor that I think he would like to put on the record about the reason why the Commonwealth is withdrawing this charge.

Mr. DiAngelus: Your Honor, I have in my hands, I've shown it to the prosecuting attorney, a certificate—or the notification of title registration, which shows this car was registered to Joseph Dubolino, not Patricia. So this was not her vehicle.

The Court: Okay. We'll note that for the record.

Mr. DiAngelus: It has to go on the record because we have a license suspension appeal coming after March and you know what Mr. Werlinsky [the PennDOT attorney] says.

The Court: All right.

Mr. DiAngelus: So the Court . . .

The Court: I'll note that for the record. Just let me see it a minute. The Court has examined the document—the document for plate DRT2087, Title # 51802880307DU and it is registered to Joseph S. Dubolino, not the—I will note that for the record and you can remind me of that at the time the license suspension appeal comes up with Mr. Werlinsky.

Mr. DiAngelus: And this was a Ford—1994 Ford Mustang . . .

The Court: I have personally looked at the matter and certified that that's the way it is.

Mr. DiAngelus: It was a Ford Mustang Coupe 1994, which is what reads on the Citation, Your Honor.

The Court: I certify that for the record.

Mr. DiAngelus: That day, we'll remind you of that, your Honor.

The Court: Well, Mr. Werlinsky will remind me too.

[ADA]: Your Honor, with that matter resolved, I think that 5550101–4 Citation, reflecting the charge of 1301, Driving a Vehicle with an Expired Registration, there will be a guilty plea to that.

The Court: Okay . . .

\* \* \*

The Court: Okay. I find you not guilty to the 1786. Accept your plea of guilty to the 1301 and impose a $75 fine plus costs. . . .

N.T., 1/31/01, at 3–6.

Based on this testimony, DiAngelus takes the position that Dubolino was found not guilty of the driving without financial responsibility charge because the evidence showed that she was, in fact, not guilty. However, ADA Stollsteimer viewed the transcript differently:

. . . [DiAngelus] wanted to put that [evidence] in the record. I had no comment about whether or not the evidence he was putting in was true, nor did I have an opinion about it. He asked to put that into the record and I allowed him to. . . .

N.T., 4/21/04, at 245. ADA Stollsteimer further commented that at the point that DiAngelus wanted to put the evidence on the record, he then "stepped out of it because we had a guilty plea negotiation. Whether the judge saw it and what the judge and he were talking about I didn't pay a lot of attention to." *Id.* at 248–49, 714 A.2d 402. Indeed, according to the ADA, his only concern was "that Officer Shields had been talked to and whether or not he agreed this was a fair disposition," *id.* at 249, 714 A.2d 402, because he would only enter into the agreement if he had the consent of Officer Shields.[3] More-

---

3. [Davis]: Would you have entered into this plea bargain if you did not believe that you had the concurrence of Officer Shields?

[ADA]: No. As an assistant district attorney, you conduct guilty pleas all the time, and you dispose of cases in that fashion. . . . [W]hat I

over, both the ADA and Kelly Sullivan, the intern, explained that there was no specific indication of a plea agreement on the record because plea negotiations are always off the record, and only the ultimate guilty plea is typically documented. *Id.* at 237–39, 272, 714 A.2d 402.

ADA Stollsteimer testified that he did not contest the evidence presented by DiAngelus because he was willing to dismiss the charges against Dubolino in reliance upon the plea agreement to which he believed the charging officer had assented. Thus, the dishonesty of DiAngelus was "material" and "prejudicial to the administration of justice." RPC 4.1(a); RPC 8.4(d). Accordingly, the ODC established that DiAngelus committed professional misconduct.

### *Discipline*

The Hearing Committee and the Board correctly viewed the dishonesty of DiAngelus to ADA Stollsteimer as deceit to the court, and therefore cited *Office of Disciplinary Counsel v. Holston,* 533 Pa. 78, 619 A.2d 1054 (1993), in support of their determination that disbarment was appropriate. In *Holston,* an attorney forged the signature of a judge on an order and subsequently lied about the origins of that forged document. In disbarring the attorney because of his dishonesty, we noted that "[t]ruth is the cornerstone of the judicial system and a license to practice law requires allegiance and fidelity to truth." *Id.* at 1057.

"While this Court certainly does not condone acts of dishonesty, we have declined to adopt a *per se* rule requiring disbarment for specific acts of misconduct." *Office of Disciplinary Counsel v. Chung,* 548 Pa. 108, 695 A.2d 405, 407 (1997). In *Chung,* an attorney pled guilty to five counts of making false statements to a federally insured financial insti-

always did ... was to make sure that [I] had the concurrence of the police officer involved in the case or at least had apprised him of what [I was] going to do before [I] did it. It's good practice. N.T., at 235–36. Had the matter not been resolved by guilty plea, ADA Stollsteimer testified that the Commonwealth would not have withdrawn the more serious charge of the violation of Section 1786 (failure to maintain financial responsibility, and the matter would have been disposed of in a separate hearing). *Id.* at 260.

tution. We disagreed with the recommendation of disbarment made by the Disciplinary Board. Based on our consideration of several factors including the nature of the misconduct and the community involvement and excellent reputation of the attorney, we imposed a five-year suspension. In the instant matter, DiAngelus's misrepresentation to the ADA is a serious offense, yet we recognize that it falls short of the egregiousness of the forging of a court order and lying to the court that we confronted in *Holston.* We acknowledge that DiAngelus was disbarred on consent in 1984, but his disbarment occurred more than twenty years ago, and was based on misconduct that he committed while addicted to cocaine. DiAngelus has not used cocaine or other intoxicants since January of 1985. As previously noted, in 2002, DiAngelus received an informal admonition, which resulted from an incident when he was co-counsel in a DUI matter. While his co-counsel was out of the country, DiAngelus, without co-counsel's knowledge or permission, signed co-counsel's name on a petition and verification

DiAngelus presented credible testimony by eight character witnesses regarding his reputation for truthfulness, honesty, and law abidingness. He serves as president of the Association for Traffic License Lawyers and is involved with the Delaware County Bar Association and Lawyers Concerned for Lawyers, an organization that assists members of the bar who struggle with substance abuse and addiction.

Our independent review of the record leads us to conclude that DiAngelus committed serious misconduct that merits the severe sanction of a five-year suspension. We further order that he is to comply with the provisions of Pa.R.D.E. 217 and that he shall pay costs, if any, to the Disciplinary Board pursuant to Pa.R.D.E. 208(g).

Justice SAYLOR, EAKIN and BAER join the opinion.

Former Justice NIGRO did not participate in the decision of this case.

Chief Justice CAPPY files a dissenting opinion in which Justice CASTILLE joins.

Chief Justice CAPPY, dissenting.

I respectfully dissent from the Majority's recommendation of a five-year suspension and would dismiss the disciplinary charges filed against Respondent Lawrence J. DiAngelus. Upon *de novo* review of the record before us, it is clear that the Office of Disciplinary Counsel (ODC) has failed to demonstrate by clear and satisfactory evidence that Mr. DiAngelus violated the alleged Rules of Professional Conduct.[1]

Black's Law Dictionary defines "de novo" as "anew; afresh, a second time." Black's Law Dictionary 435 (6th ed.1990). The *sine qua non* of *de novo* review is that the reviewing body possess and exercise the authority to arrive at an independent judgment on the matter in dispute. *West Chester Area School District v. Collegium Charter School*, 571 Pa. 503, 812 A.2d 1172, 1178 n. 9 (2002).

Based on this standard, a review of the transcript of the January 31, 2001 hearing, which was held on Dubolino's motor vehicle violations, as well as the transcript of Respondent's disciplinary hearing, leads my independent judgment to stray from that of the Majority and the lower tribunals.[2]

The transcript of the January 31, 2001 hearing reveals that ADA Stollsteimer informed the court that Mr. DiAngelus would be presenting evidence as to why the Commonwealth was withdrawing the charge of a violation of Section 1786, which requires a motor vehicle's "owner" or "registrant" to maintain financial responsibility of the vehicle. N.T., 1/31/01, at 3.[3] Mr. DiAngelus presented to the court a certificate of

---

1. ODC has the burden of proving, by a preponderance of the evidence, that an attorney's actions constitute professional misconduct. *ODC v. Kiesewetter*, 585 Pa. 477, 889 A.2d 47, 54 n. 5 (2005). This burden must be established by clear and satisfactory evidence. *Id.*

2. The Disciplinary Board did not reference the transcript of the January 31, 2001 hearing in its report.

3. Section 1786(d) provides:
   (d) Suspension of Registration and Operating Privilege.—
   (1) The Department of Transportation shall suspend the registration of a vehicle for a period of three months if it determines the required financial responsibility was not secured as required by this chapter and shall suspend the operating privilege *of the owner or registrant* for

title registration, which demonstrated that the vehicle was registered to Joseph Dubolino and not Patricia Dubolino. *Id.* at 3–4. The trial court examined the document and certified that the vehicle was not registered to Patricia. *Id.* at 4. Further, prior to entering the hearing on January 31, 2004, Mr. DiAngelus maintained that he showed ADA Stollsteimer the owner's card for the motor vehicle, which noted that the car was owned by Joseph and not Patricia Dubolino. N.T. of Disciplinary Hearing of 4/22/04 at 13, 14. Thus, as Patricia Dubolino was neither the registrant nor the owner of the motor vehicle, there seems to have been no basis for prosecuting her for a violation of Section 1786 and little motivation for Mr. DiAngelus to have misrepresented to ADA Stollsteimer that he entered into a plea agreement with the arresting officer to exonerate her.[4] The transcript of the January 31, 2001 hearing supports this position. After examining the certificate of title registration, the trial court proceeded to find Patricia Dubolino not guilty of violating Section 1786 and accepted her plea of guilt to violating 75 Pa.C.S. § 1301, which applies to the person driving or moving the vehicle with an expired registration.[5]

Additionally, I disagree with the Majority that if a misrepresentation was made, such statement was "material" and "prejudicial to the administration of justice" pursuant to RPC 4.1(a) and 8.4(d). Under the unusual facts of this case, a

a period of three months if the department determines that the owner or registrant has operated or permitted the operation of the vehicle without the required financial responsibility. . . .
75   Pa.C.S. § 1786(d) (emphasis added).

**4.** The matter was before the trial court because Patricia Dubolino had erroneously pled guilty to the offense and later sought to appeal her conviction *nunc pro tunc* when she was notified that her license would be suspended for three months.

**5.** Section 1301, entitled "Registration and Certificate of title required," provides as follows:

(a) Driving unregistered vehicle prohibited.—No *person* shall *drive* or *move* and no owner or motor carrier shall knowingly permit to be driven or moved upon any highway any vehicle which is not registered in this Commonwealth unless the vehicle is exempt from registration.
75   Pa.C.S. § 1301(a) (emphasis added).

misrepresentation regarding a plea agreement would not alter the outcome of the proceeding because Mr. DiAngelus' client was not culpable of the underlying offense.

Under these circumstances, I find that the evidence in support of the violations of the alleged Rules of Professional Conduct falls somewhere short of clear and satisfactory. The Hearing Committee and Disciplinary Board dismissed for lack of proof in this very disciplinary matter the charges of misconduct relating to Robert Closs.[6] I would reach that same conclusion as to the charges of misconduct relating to Patricia Dubolino.

Accordingly, I cannot join in the Majority's imposition of discipline.

Justice CASTILLE joins this dissenting opinion.

---

6. In the Robert Closs matter, ODC alleged that Mr. DiAngelus lied to a magisterial district judge with regard to a plea agreement with a police officer regarding Closs's motor vehicle violations. The Hearing Committee found that the testimony of ODC's witnesses were either inconsistent or incredible and that ODC therefore did not meet its burden of proof.