NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 15-2472

———————————

In re: FRANCIS MALOFIY,

Appellant

———————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-14-mc-00139)
District Judge: Honorable Petrese B. Tucker

———————————

Submitted Under Third Circuit LAR 34.1(a)
June 13, 2016

Before: AMBRO, JORDAN, and GREENBERG, Circuit Judges

(Opinion filed: June 30, 2016)

———————————

OPINION[*]

———————————

AMBRO, Circuit Judge

Attorney Francis Malofiy appeals his suspension from practicing law in the U.S.

District Court for the Eastern District of Pennsylvania. A three-judge panel of that Court,

after determining that Malofiy violated various rules of conduct by engaging in

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

unprofessional contact with an unrepresented defendant, recommended a suspension of three months and one day. Chief Judge Tucker adopted that recommendation and entered an order from which Malofiy appeals. He argues that he complied with the rules and that, even if he did not, the punishment is overly harsh. We disagree on both counts and affirm the suspension.[1]

## I. Background

Malofiy filed a copyright infringement lawsuit in the Eastern District of Pennsylvania in 2011 against the performing artist Usher, as well as other defendants, over the song "Bad Girl." Malofiy's client, Daniel Marino, alleged that he was one of the writers of the song but did not receive credit or proceeds. One of the other defendants was lyricist William Guice, who also worked on the song. Guice, who was unrepresented and previously had never been a defendant in a civil lawsuit, called Malofiy after receiving the complaint to find out what it was about. The core of the allegations is that, in this conversation and subsequent communications, Malofiy misled Guice into thinking he was a witness rather than a defendant who stood to face financial liability.

---

[1] The District Court's jurisdiction stems from its "inherent authority to set requirements for admission to its bar and to discipline attorneys who appear before it." *In re Surrick*, 338 F.3d 224, 229 (3d Cir. 2003). We have appellate jurisdiction per 28 U.S.C. § 1291. "We review district courts' decisions regarding the regulation of attorneys who appear before them for abuse of discretion." *Surrick*, 338 F.3d at 229. Here the exercise of discretion turned on factual findings, which we review for clear error. *See* Fed. R. Civ. P. 52(a)(6). Meanwhile, our "review of the District Court's interpretation of legal precepts is plenary." *Surrick*, 338 F.3d at 229.

There is no transcript of this first conversation, but the District Court[2] developed the facts in some detail. As a result, we know that during the call Malofiy learned that Guice was unrepresented. Malofiy explained that he represented Marino and that Guice did not need to talk to him. Malofiy said that Guice was a defendant in the lawsuit, but he did not explain that this meant Marino and Guice had an adversarial relationship.

Malofiy wanted to get an affidavit from Guice, but he was unsure how to proceed given that Guice did not have a lawyer. He put Guice on hold and spoke with James Beasley, Jr., an attorney with whom he shared office space and sometimes consulted. Beasley's advice was to tell Guice to get a lawyer and, if he did not want one, to make sure he understood that his interests were adverse to Marino's. Malofiy represents that he followed this first piece of advice and told Guice about the advisability of getting counsel. Guice disputes this, and the District Court credited his testimony; it found that Malofiy never advised Guice during this first conversation to hire a lawyer.

In any event, after placing Guice on hold, Malofiy returned to the call and questioned him about "Bad Girl." Guice said that Marino was involved in writing the song and that he was unaware that Marino had not been credited or paid. Malofiy responded that he would prepare an affidavit for Guice to review. Guice later said that he thought he was helping Malofiy and that he did not believe that he was defending himself against personal liability.

---

[2] "District Court" in this opinion refers to the Chief Judge and, by extension, to the panel whose findings and recommendations she approved.

Based on this conversation, Malofiy drafted an affidavit and called Guice back. This second call was recorded. Malofiy called Guice "bud" and told him repeatedly that he was going to "hold tight" or "sit tight" with respect to claims against Guice. Appendix ("App.") 28–29 (internal quotation marks omitted). Malofiy also said that he was "not going to do anything" with Guice in the case and that Marino "d[id]n't really want to point the finger at" him. App. 29 (internal quotation marks omitted) (alteration in original). Malofiy added that Marino thought Guice was "pretty cool" and "probably didn't know" that he had not received credit or payment. *Id.* (internal quotation marks omitted). Malofiy even offered to investigate whether Guice should have gotten more money for his role in the song. Without advising him to get a lawyer, Malofiy secured Guice's agreement to sign the affidavit. He then sent Guice the affidavit in an e-mail whose subject line mentioned Usher, but not Guice, as a defendant.

Either before Malofiy e-mailed the affidavit or shortly after, Beasley advised him that the document should memorialize that Guice had been advised to get a lawyer but had chosen not to do so. Malofiy sent a follow-up e-mail to Guice saying that if he wanted "to review [the affidavit] with a lawyer, that's fine too." App. 32 (internal quotation marks omitted) (alternation in original). Within the next week, Guice signed and returned the affidavit without having consulted an attorney.

Guice never filed an answer to Marino's lawsuit. As he later explained, he thought that his affidavit was the only response that was needed. Without notifying Guice in advance, Malofiy sought and obtained a default judgment against him in June 2012 based

4

on his failure to file a responsive pleading. Guice received a copy of the request for a default judgment but did not understand what it meant and never responded to it.

In the spring of 2013, Malofiy set up a deposition with Guice. They had two calls, but Malofiy never mentioned the default or advised Guice to get counsel. During the deposition, Guice realized for the first time that Marino was seeking money damages from him. He explained that he thought he was a witness in the case. When he learned that a judgment had been entered against him, Guice said that his understanding of his role had been "turned on its head" and that he felt "played" by Malofiy. App. 35 (internal quotation marks omitted).

Later that year, a group of defendants filed a motion for sanctions against Malofiy based on his conduct during discovery. As relevant here, Judge Diamond, who was presiding over the Marino lawsuit, determined that Malofiy had violated Pennsylvania Rule of Professional Conduct 4.3 by obtaining an affidavit and deposition testimony from Guice without first advising him to get a lawyer or correcting his perception that he was merely a witness. That rule, titled "Dealing with Unrepresented Person," provides:

> (a) In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested.
>
> (b) During the course of a lawyer's representation of a client, a lawyer shall not give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the lawyer knows or reasonably should know the interests of such person are or have a reasonable possibility of being in conflict with the interests of the lawyer's client.
>
> (c) When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer should make reasonable efforts to correct the misunderstanding.

5

The first comment to the rule notes that an "unrepresented person, particularly one not experienced in dealing with legal matters, might assume that a lawyer is disinterested in loyalties or is a disinterested authority on the law even when the lawyer represents a client." It goes on to say that, "[i]n order to avoid a misunderstanding, a lawyer will typically need to identify the lawyer's client and, where necessary, explain that the client has interests opposed to those of the unrepresented person."

As a sanction for the violation, Judge Diamond undid the default judgment and struck Guice's affidavit and deposition testimony. He also ordered Malofiy to pay approximately $28,000 in fees and costs. Finally, Judge Diamond, to determine whether Malofiy should face further sanctions, referred the matter to Chief Judge Tucker, who in turn appointed the three-judge panel discussed above.

Although recognizing the possibility that Judge Diamond's conclusion that Malofiy violated Rule 4.3 might be entitled to preclusive effect, the District Court (through the panel appointed by Chief Judge Tucker) opted to hear testimony and review the record *de novo*. It, like Judge Diamond, concluded that Malofiy violated Rule 4.3. It also found that he violated Pennsylvania Rules of Professional Conduct 4.1(a) (a lawyer "shall not knowingly . . . make a false statement of material fact or law to a third person"), 8.4(c) (prohibiting "conduct involving dishonesty, fraud, deceit or misrepresentation"), and 8.4(d) (same for "conduct that is prejudicial to the administration of justice"). The basis for these three additional violations was Malofiy's representation that he would not take any action against Guice. The Office of Disciplinary Counsel of the Disciplinary Board of the Supreme Court of Pennsylvania,

6

which was appointed by the District Court to investigate and prosecute the case, recommended a reprimand, but the Court instead imposed a suspension of three months and a day.

## II. Discussion

Malofiy challenges the conclusion that he violated Rules 4.3, 4.1(a), 8.4(c), and 8.4(d). He also argues that, even if he did engage in misconduct, the sanction is overly severe. We address each argument in turn.

*A. Violation of rules*

Like the District Court, we begin with Rule 4.3. Malofiy contends that he complied with the rule by 1) saying during the first conversation that Guice could secure counsel, 2) including a similar statement in an e-mail regarding the affidavit, and 3) informing Guice that he was a defendant. As to the first of these considerations, the District Court rejected Malofiy's testimony that he told Guice during the first call that he could get a lawyer. Instead, it credited Guice's testimony to the contrary. Such "[c]redibility determinations are the unique province of a fact finder," and we reject them only in "rare circumstances." *Dardovitch v. Haltzman*, 190 F.3d 125, 140 (3d Cir. 1999) (internal quotation marks omitted). Malofiy has given us no compelling reason to do so here.

As such, we must determine whether Malofiy's warning in the e-mail and his acknowledgment of Guice's status as a defendant satisfy Rule 4.3. The District Court determined that Malofiy's actions "failed to adequately convey the adversity of interests between [his] client and Mr. Guice." App. 40–41. We agree. Per Rule 4.3(c), Malofiy

7

"kn[ew] or reasonably should [have] know[n] that the unrepresented person misunderst[ood] the lawyer's role in the matter." Rather than correct the misunderstanding, Malofiy continued to foster the impression that Guice was a witness rather than a person who stood personally to lose money. As the first comment to the rule makes clear, Malofiy should have remedied the confusion by explaining that Guice's interests were adverse to Marino's. However, he consistently suggested that the opposite was true.

We next consider Rule 4.1(a), which prohibits false statements that are made knowingly and are material. Here Malofiy told Guice several times that he was going to "hold tight" or "sit tight" and also said that he was "not going to do anything" with the claims against Guice. App. 29 (internal quotation marks omitted). Instead, Malofiy filed a motion for default judgment against Guice. As such, we agree with the District Court that Malofiy made a false statement. It determined that he did so knowingly, and we have no reason to disturb that finding. Additionally, it correctly concluded that the materiality requirement of Rule 4.1(a) was satisfied because the conduct led to an entry of default judgment, which was only undone through judicial intervention. *See Office of Disciplinary Counsel v. DiAngelus*, 907 A.2d 452, 456 (Pa. 2006) (materiality standard met where "violation affected the outcome of the proceedings").

Finally, the conclusion that Malofiy knowingly made a false statement of material fact is sufficient also to demonstrate a violation of Rules 8.4(c) and 8.4(d). *Id.* As a result, we affirm each of the District Court's conclusions about Malofiy's violations of the Pennsylvania Rules of Professional Conduct.

8

*B. Appropriateness of sanction*

Malofiy also argues that, even if he violated the rules, it was due to "youth and inexperience." Appellant's Br. at 56. He describes the suspension as overly punitive and "off the charts." *Id.* He also cites the testimony of various character witnesses who described him as a hard-working and diligent lawyer. His arguments, however, miss the mark.

The American Bar Association publishes a guide that serves "as a model for determining the appropriate sanctions for lawyer misconduct." *In re Mitchell*, 901 F.2d 1179, 1184 (3d Cir. 1990). For violations involving improper communications with individuals in the legal system, the guide provides that a suspension "is generally appropriate . . . when the lawyer knows that [a] communication is improper, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding." *ABA Standards for Imposing Lawyer Sanctions* § 6.32 (1992) [hereinafter *ABA Standards*].

Here the District Court made findings of both knowing conduct and harm. It determined that Malofiy knew his conduct violated the rules because, after being advised by Beasley of the need to be clear about the adverse relationship between Guice and Marino, Malofiy "led Mr. Guice to believe Mr. Marino was not pursuing claims against him and that he was only a witness in the case." App. 46. As for harm, the Court noted that, "[b]ut for Judge Diamond's intervention, Mr. Guice was at risk of having a default judgment entered against him." App. 47. Malofiy has not demonstrated any fault with these findings.

Moreover, one of the factors courts should consider in imposing sanctions is the "existence of aggravating or mitigating factors." *ABA Standards* § 3.0(d). Here the District Court properly concluded that the aggravating factors outweigh the mitigating ones. As mitigating factors, the Court acknowledged that Malofiy is a relatively young lawyer, he sought advice from Beasley, he had no prior disciplinary record, and he had numerous character witnesses who testified on his behalf. As aggravating factors, it listed his "refusal to acknowledge that his conduct toward Mr. Guice was in any way inappropriate," App. 49, and his tardiness in turning over a full transcript of the recorded call with Guice. The Court was "most troubled" by Malofiy's failure to take responsibility for his actions even when confronted with the transcript. *Id.*

It also noted that, even apart from Malofiy's communications with Guice, "his litigation conduct in this District gives us cause for concern about his professionalism." App. 48. For instance, the following are examples of comments Malofiy made during depositions: "I'm tired of your clap trap and hogwash"; "You're like a little kid with your little mouth"; "This is bullshit"; "This is nauseating—wait. This is nauseating"; and "I never seen [sic] any lawyer do this so bad ever." App. 36 (internal quotation marks omitted). Additionally, Judge Diamond found that Malofiy made 65 "speaking" objections (whereby counsel improperly testifies rather than merely stating the reason for the objection) during a single deposition. Malofiy has since conceded that his behavior during discovery was unprofessional and uncivil.

In light of the District Court's determinations, we find no abuse of discretion in imposing the suspension.

10

\* \* \* \* \*

In this context, we affirm both the conclusion that Malofiy violated the Pennsylvania Rules of Professional Conduct and the imposition of a suspension of three months and one day.[3]

---

[3] The Eastern District of Pennsylvania is an intervenor in this case and has asked us to affirm. Malofiy argues both in his brief and in a motion to strike the Eastern District of Pennsylvania's brief that the intervention was improper. This position is foreclosed by our decision on January 15, 2016 granting the Eastern District of Pennsylvania's motion to intervene. As such, we reject the argument and deny the motion to strike.