**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 15-2270, 15-2359

_____

DANIEL V. MARINO,
Appellant in 15-2359

v.

USHER, a/k/a Usher Terry Raymond, IV; JAMES SAMUEL HARRIS, III; TERRY
STEVEN LEWIS; BOBBY ROSS AVILA, JR.; ISSIAH AVILA, JR.; WILLIAM C.
GUICE; DANTE E. BARTON; DESTRO MUSIC PRODUCTIONS, INC.;
DEFENDERS OF MUSIC; FLYTE TYME TUNES; SUBLIME BASEMENT TUNEZ;
UR-IV MUSIC, INC.; WARNER-TAMERLANE PUBLISHING CORP.; MARK
PITTS; BYSTORM ENTERTAINMENT; TOMMY VAN DELL; IN2N
ENTERTAINMENT GROUP, LLC; EMI BLACKWOOD MUSIC, INC.; SONY
MUSIC ENTERTAINMENT; EMI APRIL MUSIC, INC.

*Francis Malofiy, Esq.,
Appellant in 15-2270

*(Pursuant to Rule 12(a), Fed. R. App. P.)

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-11-cv-06811)
District Judge: Honorable Paul S. Diamond

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on June 23, 2016

Before:   McKEE,[*] *Chief Judge*, FISHER and GREENAWAY, JR. *Circuit Judges*.

_____

[*] Judge McKee concluded his term as Chief of the U.S. Court of Appeals for the Third
Circuit on September 30, 2016.

(Opinion Filed:  December 8, 2016)

_____

OPINION*

_____

MCKEE, *Chief Judge*.

Songwriter Daniel Marino appeals the district court's grant of summary

judgment in favor of the defendants in his copyright infringement suit.[1]  The district court

found that, because Marino had jointly created the song *Club Girl*, later developed into

the derivative work *Bad Girl* and used by popular musician Usher, Marino's infringement

claims must fail.  Marino's attorney, Francis Malofiy, also appeals the district court's

order imposing sanctions against him in the amount of $28,266.54 for contacting an

unrepresented defendant in the copyright suit, in violation of Rule 4.3 of the

Pennsylvania Rules of Professional Conduct.  For the reasons that follow, we will affirm

both orders.

### I.

In its opinion granting summary judgment in favor of the defendants, the district

court reiterated what it terms the defendants' "complete and meritorious defense," that

Marino's claims must fail because *Club Girl* was jointly created by Marino, Guice, and

Barton.  The district court correctly held that co-authors of a joint work are each entitled

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Marino has appealed what appears to be every order entered by the district court, including routine discovery orders and other orders that are plainly unappealable.  App. at 1–2.

to undivided ownership and that the joint owner of a copyright cannot sue his co-owner for infringement.[2]  The court reasoned that, without direct infringement, there can be no vicarious infringement, hence the derivative song, *Bad Girl*, did not infringe on Marino's rights.  The district court also concluded that Guice and Barton conveyed a valid non-exclusive license for the song to the other defendants.

Moreover, in rejecting Marino's contrary claims, the court stated that Marino's argument was so without merit as to be "absurd and contrary to law."[3] The district court dismissed Marino's state law claims without prejudice, noting that all of his federal claims had been disposed of and declining to exercise supplemental jurisdiction.  Marino appeals.

The district court also imposed sanctions against Malofiy in the amount of $28,266.54 for contacting unrepresented defendant Guice, in violation of Rule 4.3 of the Pennsylvania Rules of Professional Conduct.[4]  Malofiy appeals, and both appeals have been consolidated.

**II**.[5]

---

[2] *See Brownstein v. Lindsay*, 742 F.3d 55, 68 (3d Cir. 2014).  *See also Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984) ("It is elementary that the lawful owner of a copyright is incapable of infringing a copyright interest that is owned by him; nor can a joint owner of a copyright sue his co-owner for infringement.").

[3] J.A. at 00011.

[4] A three judge panel of this Court recently upheld the district court's imposition on Malofiy of a three-month suspension from the practice of law.  *See In re Francis Malofiy, Appellant*, No. 15-2472, 2016 WL 3553258, at *4 (3d Cir. June 30, 2016).

[5] We have jurisdiction under 28 U.S.C. § 1291.  The district court had jurisdiction under 28 U.S.C. § 1338.

We review de novo the district court's grant of summary judgment under Rule 56,[6] as well as its dismissals under Rule 12(c).[7] To determine whether the district court properly granted summary judgment, we employ the same analysis as the district court to determine whether any genuine disputes of material fact exist, while considering all evidence and all reasonable inferences in favor of the non-moving party.[8] In reviewing a judgment on the pleadings under Rule 12(c), "we must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."[9] We review findings of fact for clear error, and "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."[10] We review a district court's decision on attorney's fees and costs for abuse of discretion.[11]

### III.

In addition to his federal copyright claims, Marino's amended complaint contained state law claims for creation of a constructive trust (Count IV) and for an accounting (Count V). Marino argues that the district court erred in dismissing those claims "sua sponte." However, the record reveals that the district court dismissed the constructive

---

[6] *See Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 186 F.3d 311, 315 (3d Cir. 1999).

[7] *Hanover Ins. Co. v. Urban Outfitters, Inc.*, 806 F.3d 761, 764 (3d Cir. 2015).

[8] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[9] *Hanover Ins. Co.*, 806 F.3d at 764 (internal quotations and citation omitted).

[10] Fed. R. Civ. P. 52(a)(6); *see Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 215 F.3d 407, 409 (3d Cir. 2000).

[11] *See Hahnemann Univ. Hosp. v. All Shore, Inc.,* 514 F.3d 300, 305 (3d Cir.2008).

trust and accounting claims after defendants had submitted a motion to dismiss and that

the issue had been fully briefed by both parties.[12]

Under § 301 of the Copyright Act, a state law claim may be preempted if it creates

rights "equivalent" to the exclusive rights within the scope of copyright.[13]  That section

also provides that state law is expressly preempted where the elements of the claim at

issue are the same as those required for an infringement claim under § 106.[14]  By

contrast, "if a state cause of action requires an extra element, beyond mere copying,

preparation of derivative works, performance, distribution or display, then . . . federal law

will not preempt the state action."[15]

Here, the district court correctly applied the express preemption test in § 301(a).[16]

Because Marino based his constructive trust claim on monies generated by the alleged

infringement, the district court concluded that the first element is satisfied, and we agree.

The second element is satisfied because Marino's constructive trust and copyright claims

---

[12] Accordingly, Marino's argument that he had no notice of potential preemption issues is without merit.

[13] *Orson, Inc. v. Miramax Film Corp.*, 189 F.3d 377, 382 (3d Cir. 1999).

[14] *See Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 217 (3d Cir. 2002).

[15] *Id.* (quoting *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1164 (1st Cir. 1994)).

[16] (1) Whether the work is the appropriate subject matter of a copyright as specified in 17 U.S.C. §§ 102 and 103 and (2) whether the state law creates rights equivalent to the exclusive rights protected by the Copyright Act as set forth in 17 U.S.C. § 106.  *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 200 (2d Cir. 1983) (rev'd on other grounds) 471 U.S. 539 (1985); 17 U.S.C. § 103(a).

arise from the same conduct.[17]  Accordingly, the district court correctly dismissed Marino's constructive trust claim.

Marino's accounting claims are similarly preempted by the Copyright Act. Marino demanded an accounting of monies received from the alleged infringement.  The claim is, by its very nature, based on the same conduct alleged in the infringement claim, and Marino has failed to allege any additional elements.[18]  The district court therefore correctly found that Marino's accounting claim was preempted.

Marino next argues that the district court improperly determined that *Club Girl* was jointly owned because the trio had a preexisting oral agreement allotting credit and revenue for the works that they created. By his own admission, Marino did not make this argument until the vast majority of defendants had been granted summary judgment.[19] As the district court correctly explained, this argument comes several years too late and is deemed waived.[20] Thus, for the reasons repeatedly explained by the district court, we conclude that the district court correctly found that *Club Girl* is a jointly owned work.[21]

Marino next contends that, because he was never credited or paid for his contribution to *Club Girl,* he did not give an implied license for the song's use.  Non-

---

[17] *See Dun & Bradstreet Software Servs., Inc.*, 307 F.3d at 217.
[18] *Id.*
[19] Marino Reply Br. at 15–16.
[20] *McLendon v. Cont'l Can Co.*, 908 F.2d 1171, 1183 (3d Cir. 1990) ("When an issue is raised on appeal for the first time in a reply brief, it is generally waived.").
[21] See Brownstein, 742 F.23d at 55 ("For two or more people to become co-authors, each author must contribute some non-trivial amount of creative, original, or intellectual expression to the work and both must intend that their contributions be combined.").

exclusive licenses may be granted orally, in writing, or impliedly through conduct.[22]  The existence of an implied license is determined by an objective inquiry into the facts; the private hopes of the creator are not relevant.[23]  Here, Marino's testimony as well as his actions indicate that he supported the use of *Club Girl/Bad Girl* by Usher.  Marino never sought to enjoin the song's release, he participated in events and celebrations surrounding the song, and he testified that he was excited at its commercial success.  In addition, the record reveals that Marino admits receiving $4,553.06 in royalties from Barton in 2006.[24]  Accordingly, the district court correctly found that Marino granted an implied license to the Appellees for the use of *Club Girl*.[25]

Marino also argues that the district court erred in dismissing his sound recording claim for lack of standing.  The law is clear that a work must be preregistered with the Copyright Office before suit can be brought for an alleged copyright violation.[26]  As the district court held, sound recordings and musical compositions are distinct from one another and require two different registrations.[27]  Here, the record reveals that, although

---

[22] *See MacLean Assoc., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 778–79 (3d Cir. 1991) (quoting 3 M. Nimmer & D. Nimmer, *Nimmer of Copyright* § 10.03(A), at 10–37 (1991) for the proposition that "[a] nonexclusive license may be granted orally, or may even be implied from conduct").
[23] *John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 42 (1st Cir. 2003).
[24] J.A. at 00440, 01798–99, 02573–74.
[25] *See I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996).
[26] *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157–58 (2010).  *See also* 17 U.S.C. § 411 (providing that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title").
[27] 17 U.S.C. § 102(a)(2), (7); *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1026 (3d Cir. 2008).

the musical compositions of *Club Girl* and *Bad Girl* were registered, the sound recordings were never registered with the Copyright Office. Accordingly, the district court correctly denied Marino's sound recording claim.

Marino relies on the doctrine of equitable tolling to argue that the district court improperly limited his claims for infringement damages to those damages that occurred within three years of the filing of this case. However, since we affirm the district court's conclusion that that there was no infringement, tolling is simply not an issue, and we need not address it.

Marino also argues that the district court abused its discretion in awarding costs and fees to the defendants in the amount of $110,888.60, reduced from a court-determined amount of $1,108,885.95 due to Marino's inability to pay. In awarding fees, a district court may consider "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"[28] Courts will consider the party's ability to pay when setting the final amount of costs and fees.[29] Here, the district court carefully considered all of the statutory factors and examined the relevant evidence before it arrived at its final amount. The district court also conducted financial discovery to determine Marino's ability to pay costs and fees. After an evidentiary hearing, the district court determined that the award should be reduced by 90

---

[28] *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534–35 n.19 (1994) (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)).
[29] *Lieb*, 788 F.2d at 156.

percent due to Marino's financial circumstances and the frivolous nature of his claims.[30]

Accordingly, we find no abuse of discretion in the award of costs and fees in the amount of $110,888.60.

Marino's contention on appeal that the district court's impartiality should be questioned is meritless. Judicial remarks may support a challenge to judge's impartiality "if they reveal an opinion that derives from an extrajudicial source," or "if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."[31] Marino has no shown that the district court's opinion either derives from an extrajudicial source or reveals the requisite level of antagonism. Instead, the brief merely claims that "the Court's opinions and findings departed from law and the largely undisputed facts of this case and revealed a bias against Plaintiff."[32] Contrary to Marino's assertions, the record reveals that the district court acted properly and impartially throughout the proceedings. It also reveals that those proceedings were fraught with misconduct by Marino's attorney, Francis Malofiy.

**IV.**

We turn now to Malofiy's appeal of the district court's order imposing sanctions in the amount of $28,266.54 for contacting unrepresented defendant William Guice,[33] in violation of Pennsylvania Rule of Professional Conduct 4.3.[34] The district court acted

---

[30] *Lieb*, 788 F.2d at 156 (court should consider whether award is excessive in light of "*plaintiff's* resources")

[31] *Liteky v. U.S.*, 510 U.S. 540, 555 (1994).

[32] Marino Br. at 64.

[33] CM/ECF No. 15-2270.

[34] Rule 4.3 provides that:

9

under 28 U.S.C. § 1927 as well as under its own inherent authority over the conduct of proceedings before it. To impose sanctions, a court must find that an attorney "has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct."[35]

The district court made the following factual determinations when examining the evidence regarding Malofiy and Guice's interactions.

> "[S]ometime around Valentine's Day, 2012," Guice (then living in Colorado) telephoned Malofiy, whose name and telephone number were on the pleading's first page. (Id. at 20:5–7; 18:8–13; 16:20–17:14; 57:25–58:9; 29:13–16.) Malofiy said that he represented Plaintiff and that Guice had no obligation to speak with him. Malofiy did not ask if Guice was represented by counsel, nor did he advise Guice to obtain counsel. (Id. 20–21.) Malofiy did not inform Guice that Marino's interests were adverse to Guice's. (Id. at 21.) To the contrary, Malofiy untruthfully assured Guice: "don't worry about it, he [Plaintiff] is not coming after you, it's everyone else." (Id. at 32:2–8.) Malofiy thus dishonestly convinced Guice that Marino was pursuing claims against only Barton and moving Defendants. (Id. at 23–24.)

---

> (a) In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested.

> (b) During the course of a lawyer's representation of a client, a lawyer shall not give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the lawyer knows or reasonably should know the interests of such person are or have a reasonable possibility of being in conflict with the interests of the lawyer's client.

> (c) When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer should make reasonable efforts to correct the misunderstanding.

[35] *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008) (citing *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 278 F.3d 175, 188 (3d Cir. 2002)).

The district court also found that Malofiy persuaded Guice to sign an affidavit stating that he, Barton, and Marino had created *Club Girl* together and that Guice's belief that Marino was entitled to producing and writing credit. The district court concluded that, due to Malofiy's misrepresentations, Guice never answered Marino's complaint, with the result that a default judgment (later vacated) was entered against him. During Guice's first deposition, it was revealed that, although Malofiy told Guice that he (Guice) was a defendant, Guice "did not know the meaning of 'defendant,'" that [Guice] was a party to the copyright litigation; that [Marino] was seeking money damages from him personally; or that Malofiy had obtained a default against him."[36] Guice was so upset by these revelations that he left the deposition and had to be deposed again at a later date, which the district court found duplicated proceedings and increased costs. The district court further found that Malofiy acted both intentionally and unreasonably in his dealings with Guice, and that Malofiy's actions had no legitimate purpose. The district court credited Guice's testimony that Malofiy did not advise him to retain counsel during their first conversation, and it further found that Malofiy's email to Guice stating that "if you want to review [the affidavit] with a lawyer, that's fine too," was insufficient to satisfy Rule 4.3.[37]

A panel of this Court recently addressed Malofiy's behavior when affirming his three month suspension from the practice of law. The panel explained:

---

[36] DCT Op. at 8.
[37] J.A. at 00083.

11

we must determine whether Malofiy's warning in the e-mail and his acknowledgment of Guice's status as a defendant satisfy Rule 4.3. The District Court determined that Malofiy's actions "failed to adequately convey the adversity of interests between [his] client and Mr. Guice." App. 40–41. We agree. Per Rule 4.3(c), Malofiy "kn[ew] or reasonably should [have] know[n] that the unrepresented person misunderst[ood] the lawyer's role in the matter." Rather than correct the misunderstanding, Malofiy continued to foster the impression that Guice was a witness rather than a person who stood personally to lose money. As the first comment to the rule makes clear, Malofiy should have remedied the confusion by explaining that Guice's interests were adverse to Marino's. However, he consistently suggested that the opposite was true.[38]

We agree with this analysis and conclude that Malofiy did in fact violate Rule 4.3.

Accordingly, the district court did not abuse its discretion when it imposed sanctions on

Malofiy in the amount of $28,266.54.

## V.

For the foregoing reasons, we will affirm the judgment of the district court.

---

[38] *In re Francis Malofiy, Appellant*, No. 15-2472, 2016 WL 3553258, at *4 (3d Cir. June 30, 2016).